IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RAZIEL MARTINEZ,       ) | |
|    ID # 39585-177,      ) | |
|       Movant,       ) | |
| ) | No. 3:19-CV-2938-N-BH |
| vs.       ) | No. 3:17-CR-582-N(1) |
| ) | |
| UNITED STATES OF AMERICA,   ) | |
|       Respondent.      ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on December 9, 2019 (doc. 2), should be **DENIED** with prejudice.

## I.    BACKGROUND

Raziel Martinez (Movant) challenges his federal conviction and sentence in Cause No. 3:17-CR-582-N(1).  The respondent is the United States of America (Government).

### A.    Conviction and Sentencing

In Count One of an indictment filed on November 8, 2017, Movant was charged with possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (*See* doc. 1.)[2]  He pled guilty to that count on April 26, 2018, under a plea agreement. (*See* docs. 20, 24.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:17-CR-582-N(1).

guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 20 at 1.)³ He agreed that the factual resume he signed was true and would be submitted as evidence. (*See id.* at 2.) The plea agreement set out the range of punishment and stated that Movant had reviewed the federal sentencing guidelines with counsel, that he understood his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of that consideration. (*See id.* at 2-3.) He understood that the Court had sole discretion to impose the sentence. (*See id.* at 3.) He had thoroughly reviewed all legal and factual aspects of the case with counsel and believed that it was in his best interest to enter into the plea agreement and plead guilty. (*See id.* at 6-7.) The guilty plea was freely and voluntarily made and not the result of force or threats, or of promises apart from those included in the plea agreement; there were no guarantees or promises from anyone as to what sentence would be imposed. (*See id.* at 6.) He waived his right to appeal his conviction and sentence and his right to contest his conviction and sentence in a collateral proceeding, except that he reserved the right to (a) bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing, (b) challenge the voluntariness of his guilty plea or the appeal waiver, and (c) bring a claim of ineffective assistance of counsel. (*See id.*) In exchange, the Government agreed not to bring any additional charges against him based on the underlying conduct and related to his guilty plea, and to dismiss any remaining charges against him in the pending indictment after sentencing. (*See id.* at 5.)

At his re-arraignment on April 26, 2018, Movant acknowledged under oath that he read, understood, and discussed the factual resume with counsel, that the stipulated facts set forth in it

---
³ Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

were true and correct, and that he had committed each of the essential elements of the offense. (*See* doc. 46 at 11, 16-17.) He also acknowledged that he understood the rights he was giving up by pleading guilty, and that he was waiving his right to appeal except in the limited circumstances set forth in the plea agreement. (*See id.* at 7-8, 13.) He affirmed that he had discussed with counsel how the sentencing guidelines might apply in his case; he understood how sentencing worked generally, and he was admonished that the guidelines were advisory and that he should not depend on any statement or promise by anyone, including counsel, about the exact sentence he would receive because only the Court could decide his sentence. (*See id.* at 8-10.) He also affirmed that, other than the plea agreement, no one had made any promise or assurance to him of any kind to make him plead guilty. (*See id.* at 14.) He acknowledged that by pleading guilty to Count One, he was subjecting himself to a maximum period of imprisonment of 20 years, a term of supervised release of at least three years and not more than life, as well as other monetary penalties and forfeiture. (*See id.* at 14-15.) Movant pled guilty, and the Court found that his guilty plea was knowing and voluntary. (*See id.* at 16-17; doc. 27.)

On June 29, 2018, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 29-1 at ¶ 18.) After applying U.S.S.G. § 2D1.1, the applicable guideline for §§ 841(a)(1) and (b)(1)(C) offenses, the PSR first calculated a base offense level of 30 by using the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(5). (*See id.* at ¶¶ 19, 24.) The PSR then classified Movant as career offender in part because he had at least two prior felony convictions of either a crime of violence or a controlled substance offense, including for (1) aggravated assault with a deadly weapon, Case No. F-0856966, in Dallas County, Texas; and (2) distribution of a controlled substance and aiding and abetting, Case No. 4:09-CR-147-A(01), in the Northern District of Texas.

(*See id.* at ¶¶ 25, 34, 36.) Based on his career offender status and the statutory maximum term of 20 years' imprisonment for Count One, his offense level was enhanced to 32. (*See id.* at ¶ 25.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29. (*See id.* at ¶¶ 26-28.) Based on a criminal history category of VI and an offense level of 29, the resulting guideline imprisonment range was 151 to 188 months. (*See id.* at ¶ 71.)

Movant objected to the PSR's career offender enhancement on August 1, 2018, arguing that his state conviction for aggravated assault with a deadly weapon did not qualify as a crime of violence for purposes of the enhancement because statements in the plea agreement and transcript of the plea colloquy in that case contradicted the judgment and indicated that there was no affirmative finding of a deadly weapon. (*See* doc. 33.) On August 13, 2018, the USPO submitted an addendum to the PSR in which it addressed Movant's objection and supported the PSR as written. (*See* doc. 34-1.)

At the sentencing hearing on September 24, 2018, counsel stated that other than the written materials submitted to the Court, he had nothing further to present for sentencing. (*See* doc. 45 at 5.) The Court overruled Movant's objections to the PSR for the reasons stated in the PSR addendum. (*See id.*) By amended judgment dated October 5, 2018, Movant was sentenced to 151 months' imprisonment, to be followed by a three-year term of supervised release. (*See* doc. 41 at 1-3.) Movant did not file an appeal.

**B.      Substantive Claim**

Movant's § 2255 motion[4] states the following ground for relief:

Ineffective assistance of counsel in connection with [Movant's] decision to plead

---

[4] Before filing the § 2255 motion in this action, Movant had filed motion for an extension of time to file a § 2255 motion on September 10, 2019, in the underlying criminal case. (*See* doc. 44.) A new § 2255 civil action was opened based on that filing, and it was subsequently dismissed for lack of jurisdiction on October 25, 2019. (*See Martinez v. United States*, No. 3:19-CV-2145-N-BH, docs. 1, 3-5 (N.D. Tex. Oct. 25, 2019).) After entry of judgment, Movant filed his § 2255 motion in that closed civil action, and this case was opened. (*See id.*, doc. 9.)

4

guilty and accept the government's plea offer.

(No. 3:19-CV-2938-N-BH, doc. 2 at 7.)  The Government filed a response on May 20, 2020.  (*See id.*, doc. 8.)  Movant filed a reply on August 7, 2020.  (*See id.*, doc. 13.)

## II.     SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.

## III.     TIMELINESS

The Government argues that the § 2255 motion is barred by the statute of limitations because Movant did not file the motion within one year from the date on which his conviction

5

became final.  (*See* No. 3:19-CV-2938-N-BH, doc. 8 at 13-17.)

**A.     Statute of Limitations**

Section 2255 of Title 28 "establishes a '1-year period of limitation' within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence under that section." *Dodd v. United States*, 545 U.S. 353, 354 (2005).  It states that:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  Regarding § 2255(f)(1), Movant's conviction became final on October 19, 2018, when the fourteen-day period for appealing his amended criminal judgment expired.  *See* Fed. R. App. P. 4(b)(1)(A)(i) (providing 14 days to appeal a criminal judgment); *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008) (holding that when a federal prisoner does not appeal a conviction, it becomes final for purposes of § 2255 upon the expiration of the time to file an appeal).  Movant does not allege that government action prevented him from filing a § 2255 motion earlier, and he has not alleged any newly recognized right.  *See* 28 U.S.C. §§ 2255(f)(2), (3).

Movant's claims that counsel rendered ineffective assistance, and that his guilty plea was unknowing and involuntary as a result, are based on alleged events or omissions that occurred

6

during plea negotiations and sentencing. The claims therefore became known or could have become known through the exercise of due diligence prior to the date his conviction became final. Because the date his conviction became final is the latest date under § 2255(f), the one-year statute of limitations began to run from that date, October 19, 2018. Movant therefore had until October 19, 2019, to file his § 2255 motion. He filed his motion 44 days later, on December 2, 2019, and it is therefore untimely under § 2255(f).[5]

### B.    Relation Back

As noted, on September 10, 2019, Movant filed a motion for an extension of time to file a § 2255 motion in the underlying criminal case, and a new civil case under § 2255 was opened. (*See* doc. 44; No. 3:19-CV-2145-N-BH, doc. 1.) That motion, which was received within the limitations period, stated that Movant was "in the process of preparing a claim of ineffective assistance of counsel claim [sic] against his attorney as it relates to the plea agreement his attorney advised and persuaded movant to enter into with respondent." (*Id.* at 1-2.) At issue is whether that filing sufficiently raised a habeas claim to which Movant's untimely § 2255 motion relates back. *See Johnson v. United States,* No. 3:97-CV-1103-G, 2010 WL 2670789, at *2 n.1 (N.D. Tex. July 1, 2010).

Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that motions filed under § 2255 "specify all the grounds for relief available to the moving party." "[A] *pro se* 'habeas petition need only set forth facts giving rise to the cause of action.'" *Black v. Davis*, 902 F.3d 541, 546 (5th Cir. 2018) (quoting *Guidroz v. Lynaugh*, 852

---

[5] Under the prison mailbox rule, the § 2255 motion is deemed filed when Movant delivered it to prison authorities for mailing to the court. *See generally Causey v. Cain*, 450 F.3d 601, 604 (5th Cir.2006) (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)); *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir.1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system), *abrogated on other grounds by Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). The § 2255 motion only shows the date of execution, December 2, 2019, not the date of delivery to prison authorities for mailing. (*See* No. 3:19-CV-2938-N-BH, doc. 2 at 10.) For purposes of this motion only, the execution date is used for this limitations analysis.

7

F.2d 832, 834 (5th Cir. 1988)). "Liberal construction of a prisoner's [habeas motion] also means that 'the substance of the relief sought by a *pro se* pleading [controls], not the label that the petitioner has attached to it.'" *Id.* (quoting *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011)). "'At the same time, however, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam) (finding that a vague reference to ineffective assistance of counsel was insufficient to properly raise a Sixth Amendment claim) (quoting *United States v. Woods*, 870 F.2d 285, 288 & n.3 (5th Cir. 1989)).

Here, the motion for extension of time specifically stated that Movant was seeking to raise a claim of ineffective assistance of counsel relating to the plea agreement that his attorney advised and persuaded him to accept. This bare statement arguably specifies a ground for relief and is more specific than the vague reference rejected in *Pineda*, although not by much. Nevertheless, in an abundance of caution, the motion for extension of time is liberally construed as a defective § 2255 motion for purposes of this motion only.

Rule 15 of the Federal Rules of Civil Procedure provides for the relation back of amendments filed after the expiration of the limitations period to the date of the original pleading when the claim asserted in the proposed amended pleading arises out of the same conduct, transaction, or occurrence. *See* Fed. R. Civ. P. 15(c)(1); *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (recognizing that Rule 15 applies in § 2255 proceedings). The claim in the untimely § 2255 motion appears to be the same claim raised in the initial filing, i.e., a claim of ineffective assistance based on counsel's alleged advice that Movant enter into a plea agreement with the Government. Because the untimely § 2255 motion clarifies the claim and adds factual support, it arises out of the same conduct, transaction, or occurrence as the claim in the initial filing for

purposes of Rule 15(c).  Movant's untimely § 2255 motion therefore relates back to the date of the original filing, and it is deemed timely.  *See* Fed. R. Civ. P. 15(c).

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole ground, Movant contends that counsel rendered ineffective assistance "in connection with [Movant's] decision to plead guilty and accept the government's plea offer." (No. 3:19-CV-2938-N-BH, doc. 2 at 7.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.  It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

9

694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.  **Plea Negotiations**

Movant contends that counsel "was ineffective for advising him to accept the government's plea offer and plea agreement designating [Movant] as a career offender when counsel knew or should have known that [Movant] was not and did not qualify as a career offender." (No. 3:19-CV-2938-N-BH, doc. 2 at 7; *see also id.*, doc. 3 at 1-2; *id.*, doc. 4 at 1-2.) He claims that counsel "informed [him] that one of the prior felonies respondent was trying to use against [him] had actually been dismissed in 2013 and, as a result, did not qualify as a prior felony 'conviction.'" (*Id.*, doc. 3 at 2; *see also id.*, doc. 13 at 9-11.) He "was assured by his attorney that, due to this fact, after his objecting to an [sic] arguing against the career offender designation, [Movant] would be sentenced according to category one of the advisory sentencing guidelines range, absent the career offender designation under 4B1.2." (*Id.*, doc. 3 at 2*; see also id.*, doc. 4 at 2.) He argues that he "only accepted the government's plea agreement because of his attorney's advice and assurances and if not for such, [he] would not have accepted the government's plea offer." (*Id.*, doc. 3 at 3; *see also id.*, doc. 3 at 9; *id.*, doc. 4 at 2.)

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)). "'When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant

circumstances and the likely consequences of his decision so that he can make an intelligent choice.'" *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*. When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breach[es] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted). A significant miscalculation between counsel's erroneous sentence estimate and the actual sentencing range can constitute deficient performance. *See id.* at 437 (finding that counsel was deficient for advising his client that he faced only 6 to 12 months' imprisonment if convicted based on misunderstanding of the guidelines, when he actually faced a range of 70 to 87 months); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (stating that "[a]n attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial.").

Even assuming for purposes of this motion only that counsel rendered deficient performance in representing Movant's sentence exposure as alleged, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of resulting prejudice. When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but, rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose[,]

11

the district court properly denies relief for lack of prejudice. *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *see also United States v. Mackay*, No. 3:04-CV-0413-D, 2007 WL 700895, at *26-27 (N.D. Tex. Mar. 6, 2007).

Here, Movant was advised both through the plea agreement and by the Court in person that by pleading guilty, he was subjecting himself to a statutory maximum period of imprisonment of 20 years on Count One.[6] (*See* doc. 20 at 2; doc. 46 at 14-15.) He was also advised through the plea documents and at his re-arraignment that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not mandatory. (*See* doc. 20 at 3; doc. 46 at 8-9.) He swore in open court that no promise had been made to him to get him to plead guilty, and that he understood he should not depend on any promise made to him, including by counsel, about what sentence he would receive as only the Court could determine his sentence under the sentencing guidelines. (*See* doc. 46 at 8-10, 14.)

Regardless of what counsel told him about his likely sentence and applicable enhancements, Movant cannot show prejudice under *Strickland* because his plea documents and responses under oath to the Court's questioning show that he was clearly informed about and understood his maximum sentence exposure when he pled guilty under the plea agreement.[7] Movant is therefore not entitled to § 2255 relief on this ground, and it should be denied.[8]

---

[6] Movant repeatedly alleges that the plea agreement under which he pled guilty "designated [Movant] as a career offender." (No. 3:19-CV-2938-N-BH, doc. 3 at 3-5, 9; *see id.*, doc. 2 at 7.) This unsubstantiated allegation is refuted by the record; the plea agreement does not contain any provision regarding, or any reference to, Movant's status as a career offender. (*See* doc. 20.) To the extent any of his claims are contingent on this unsubstantiated allegation, they are without merit and do not entitle him to § 2255 relief.

[7] Movant also alleges that "absent counsel's ineffectiveness, [he] would never have plead [sic] guilty to being a career offender and would have instead insisted on going to trial." (No. 3:19-CV-2938-N-BH, doc. 3 at 10.) He did not plead guilty to "being a career offender", however; he pled guilty to Count One of the indictment. (*See* docs. 1, 20, 24.) His conclusory and inapplicable allegation does not and cannot establish prejudice under *Strickland*.

[8] The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him, even though inconsistent with representations he made in court when

**B.**     **Failure to Object**

Movant also alleges that "[i]n his advising [Movant] to accept the plea agreement and to plead guilty, [Movant's] attorney assured [him] that he ([Movant's] attorney) would argue at sentencing that [Movant] did not qualify as a career offender because [Movant] did not have two prior felony convictions required by 4B1.2, the U.S.S.G." (No. 3:19-CV-2938-N-BH, doc. 3 at 2; *see also id.*, doc. 4 at 1; *id.*, doc. 13 at 11.) Movant contends that counsel "never objected to [Movant] being designated as a career offender as he had assured [Movant] he would do at sentencing, effectively abandoning [Movant], or at least [Movant's] crucial/significant argument at a crucial stage in [Movant's] criminal proceedings." (*Id.*, doc. 3 at 2; *see also id.*, doc. 3 at 10; *id.*, doc. 4 at 2.)

The record reflects that counsel filed objections to the PSR specifically challenging the career offender enhancement on the ground that there was no affirmative finding of a deadly weapon in Movant's plea agreement or the transcript in his plea colloquy. (*See* doc. 33.) At sentencing, counsel indicated that he was presenting for consideration "what's contained in the written materials," which included the objections to the career offender enhancement. (doc. 45 at 5.) Movant's claim that counsel failed to object to the career offender enhancement is without merit and does not warrant § 2255 relief.

---

entering his plea. A movant is entitled to an evidentiary hearing if he presents evidence of: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998) (citing *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989)). A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id.* When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record," however, the Court may dispense with his allegations without an evidentiary hearing. *Id.* Here, Movant has not provided evidence of specifically where and when counsel made any promise that allegedly caused him to plead guilty or identified an eyewitness to such promise. He also has failed to provide independent indicia of the merit of an alleged promise. To the extent Movant's claim may be liberally construed to argue that counsel promised he would receive a specific sentence, he has not demonstrated entitlement to an evidentiary hearing or to § 2255 relief on this basis.

To the extent Movant contends that counsel was ineffective for not objecting to the career offender enhancement on the specific basis that "the government could not use the affravated [sic] assault with a deadly weapon charge against [Movant] because [Movant] was never adjudged guilty of that charge and the case had been dismissed against [Movant] almost six (6) years prior to [Movant's] instant offense leaving [Movant] with only one prior felony conviction," this claim is also without merit. (No. 3:19-CV-2938-N-BH, doc. 3 at 9; *see also id.*, doc. 3 at 2-5.) The record shows that Movant pled guilty to felony aggravated assault with a deadly weapon in Case No. F-0856966, in Dallas County, Texas, and was sentenced to four years of deferred adjudication probation. (*See* doc. 29-1 at ¶¶ 25, 34.) In 2013, he was unsuccessfully discharged from his deferred adjudication, and the case was dismissed after his period of deferred adjudication expired and the state court had not proceeded to an adjudication of guilt. (*See id.* at ¶ 34; No. 3:19-CV-2938-N-BH, doc. 8 at 27.)

For purposes of the career offender enhancement under the guidelines, "'[a case] in which a defendant received a diversionary disposition, such as deferred adjudication . . ., and after the defendant completed the diversionary disposition the underlying offense was dismissed . . . [remains] a valid basis for a career offender designation,'" absent evidence of innocence or some error of law that resulted in the dismissal. *United States v. Daniels*, 588 F.3d 835, 837 (5th Cir. 2009) (quoting *United States v. Santana*, 220 F. App'x 283, 286 (5th Cir. 2007)); *see also United States v. Guerrero*, 460 F. App'x 424, 425-26 (5th Cir. 2012). Movant has provided no facts or evidence showing that his aggravated assault with a deadly weapon case was dismissed because of his innocence or an error of law. The offense was therefore properly counted towards his status as a career offender under the guidelines, so his allegations to the contrary are without merit and unsupported by the record. *See Daniels*, 588 F.3d at 837.

Movant has failed to show that counsel was deficient for failing to raise a meritless objection to his status as a career offender on the basis that his aggravated assault charge, to which he pled guilty, was dismissed at the expiration of his term of deferred adjudication. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). Because any such objection was without merit, he also has failed to show *Strickland* prejudice, i.e., that the objection would have been sustained and the result of the proceeding would have been different but for counsel's alleged deficiency. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument. . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Movant has failed to satisfy both *Strickland* prongs, and the claim should therefore be denied.

## V.    INVOLUNTARINESS OF PLEA[9]

In his brief in support of the § 2255 motion, Movant contends that "his guilty plea was not entered into knowingly and voluntarily as [Movant] received erroneous and incorrect advice from his attorney that caused [him] to accept the government's plea agreement, as a result, [his] plea was not knowing and voluntary when he entered it based on his attorney's advice." (No. 3:19-CV-2938-N-BH, doc. 3 at 3.) He claims that "as a result of his attorney's advice, [he] did not understand the consequences of his guilty plea, i.e., that he would in fact ultimately be sentenced as a career offender." (*Id.*, doc. 3 at 5.)

---

[9] Because this claim was raised for the first time in Movant's brief, which was filed over one year after his conviction became final under § 2255(f), and it does not appear to relate back to the brief statement of his claim in his initial motion for an extension of time, the claim appears to be time-barred. Because the limitations issue is not jurisdictional, however, courts may bypass it and proceed to the merits of a habeas action. *See, e.g.*, *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences

of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Accepting for purposes of this motion only that counsel misrepresented or miscalculated Movant's sentencing exposure in relation to the applicability of the career offender enhancement, "an erroneous estimate by counsel as to the length of sentence" does not necessarily render a guilty plea involuntary. *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981); *see also Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002) ("a guilty plea is not rendered involuntary because the

defendant's misunderstanding [of the sentence] was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed.") (emphasis in original), *overruled on other grounds by Glover v. United States*, 531 U.S. 198 (2001).

As discussed, Movant's plea documents, the Court's questioning at his rearraignment, and Movant's responses under oath demonstrate that he knew at the time he pled guilty that he was subject to a maximum sentence of 20 years' imprisonment for Count One; that no promise had been made to him to get him to plead guilty and that he should never depend on any promise made to him, including by counsel, about the exact sentence he would receive; that the sentencing guidelines were advisory and not binding; that the Court alone would determine his sentence after consideration of the sentencing guidelines and the PSR; and that no one could predict with certainty the Court's consideration of the sentencing guidelines. (*See* doc. 20 at 2-3; doc. 46 at 9, 14.) With this knowledge, Movant still persisted with his guilty plea.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Even assuming for purposes of this motion only that this claim is not time-barred, it still fails because he has failed to overcome the presumption of verity given to his sworn statements in

18

open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 74. As discussed, his plea agreement and his sworn statements in open court, including his testimony about the maximum penalties to which he would be exposed, the exclusive role of the Court in determining his sentence after consideration of the sentencing guidelines and the PSR, the advisory nature of the sentencing guidelines, and the inability to predict with certainty the outcome of the Court's consideration of the sentencing guidelines contradict his claim that his plea was not knowing and voluntary because he believed the career offender enhancement under the guidelines would not apply to him, based on counsel's alleged representations. *See Lopez v. United States*, Nos. 3:06-CV-2342-N, 2008 WL 3381759, at *6 (N.D. Tex. Aug. 5, 2008) ("That movant 'neither refused to enter his plea nor voiced any objection when confronted with this information precludes him from arguing that he pled guilty in reliance upon some alternative characterization of his exposure given to him by his counsel.'") (quoting *United States v. Bjorkman*, 270 F.3d 482, 503 (7th Cir. 2001)).

Movant has not shown that his guilty plea was involuntary or that he was unaware of the consequences of his guilty plea. He is not entitled to relief on this claim, and it should be denied.

## VI. EVIDENTIARY HEARING

Movant requests an evidentiary hearing before this Court on his claims. (*See* No. 3:19-CV-2938-N-BH, doc. 3 at 11; *id.*, doc. 13 at 15.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373.

Here, Movant has failed to demonstrate the existence of a factual dispute that creates a

genuine issue. He also has failed to come forward with independent indicia in support of the likely merit of his claims. *See Reed*, 719 F.3d at 373. He has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## VII. RECOMMENDATION

The *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on December 9, 2019 (doc. 2), should be **DENIED** with prejudice.

**SIGNED this 11th day of October, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE